IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| KANDI JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIV-16-1020-R |
| | ) | |
| STANDARD CONSULTING, | ) | |
| STANDARD TESTING AND | ) | |
| ENGINEERING COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Defendant Standard Testing and Engineering has filed a Motion to Dismiss (Doc. No. 28), to which Plaintiff has filed a response. Defendant filed a reply in support of its motion and the Court granted Plaintiff leave to file a sur-reply in support of her position. Defendant filed an additional reply in support of its position. Following the filing of the briefs on the motion to dismiss, Plaintiff filed a Notice of Additional Authority (Doc. No. 29). In reaction thereto Defendant filed a Motion to Strike (Doc. No. 31), to which Plaintiff filed a response. Having considered the parties' submissions, the Court finds as follows.[1]

Defendant's Motion to Strike (Doc. No. 31) is hereby DENIED. The Court is capable of discerning whether the authority provided by Plaintiff as a supplement to her prior filings is applicable in this action without the need for a motion by Defendant,

---

[1] Defendant Standard Consulting is a successor to StanTech, LLC, who actually employed Ms. Jones. For clarity, the Court will refer to StanTech throughout this Order because that was the name during the relevant period.

necessitating a response by Plaintiff, and potentially a reply by Defendant. The Court therefore turns to Defendant's motion to dismiss.

Defendant contends dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate because Plaintiff did not exhaust her Title VII, ADEA, and OADA claims against it, because Standard testing and Engineering Company was not named as a respondent in her EEOC charge.[2] The Tenth Circuit's position on whether exhaustion is jurisdictional or merely a condition precedent has been in a state of evolution in recent years. Recently, in *Wickware v. Manville*, --- Fed.Appx. --- (10th Cir. Jan. 17, 2017), a panel of the court noted:

> We acknowledge that we have previously held that "[i]n the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit." *Jones v. U.P.S, Inc.*, 502 U.S. 1176, 1183 (10th Cir. 2007). . . . However, subsequently in *Gad v. Kansas State University*, 787 F.3d 1032 (10th Cir. 2015), in holding that the EEOC's "verification requirement"─that is, the EEOC's requirement that charges be verified (i.e., notarized or signed under penalty of perjury) was "not jurisdictional," *id.* at 1036, we analyzed recent Supreme Court precedent and "reexamined the issue of whether exhaustion of administrative remedies is jurisdictional," *Hung Thai Pham v. James*, 630 Fed.Appx. 735, 737 (10th Cir. 2015). *Gad* raises the question of whether the district court's jurisdictional rationale here remains legally viable. . . . However, we need not resolve that question. . . . [E]xhaustion of administrative remedies is still an important condition precedent to a lawsuit under the ADA and, because [Defendant] has never waived or forfeited its exhaustion defense, [Plaintiff] must still establish that he exhausted his retaliation claim.

*Id.* at *11 n. 4. Despite the Tenth Circuit's apparent criticism of the District Court in *Wickware*, as noted by the Circuit, in *Arabalo v. City of Denver*, 625 Fed.Appx. 851 (10th Cir. 2015), the circuit, and accordingly this Court, are "bound by the precedent of prior

---

[2] Plaintiff concedes dismissal of her OADA claims is appropriate and accordingly such claims are hereby dismissed.

panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court." *Id.* at 859 (quoting *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993)). As such, the Court concludes that it is appropriate to address this motion under Rule 12(b)(1).

Generally, to proceed against a party on a Title VII or ADEA claim, a plaintiff must name the defendant as her employer in an EEOC charge. *Knowlton v. Teltrust Phones, Inc.*, 189 F.3d 1177, 1185 (10th Cir.1999). There are two narrow exceptions to this rule, when "the defendant was informally referred to in the body of the charge or where there is sufficient identity of interest between the respondent and the defendant to satisfy the intention of Title VII [and the ADEA] that the defendant have notice of the charge and the EEOC have an opportunity to attempt conciliation." *Romero v. Union Pac. R.R.*, 615 F.2d 1303 (10th Cir.1980).[3] The *Romero* Court identified four factors for the Court to consider when a plaintiff seeks to bring an employment discrimination claim against a defendant not named in her EEOC charge:

---

[3] Plaintiff concedes the first *Romero* exception is unlikely to apply. Doc. No. 28, p. 9. Plaintiff argues for the existence of an additional exception based on *Knowlton*. Therein, following a jury trial in plaintiff's favor, the court first concluded there was sufficient evidence to hold a parent company and a fellow subsidiary liable under a theory of single-employer status between the entities. The court then considered whether those same entities should have been dismissed because plaintiff omitted them from EEOC charge. The court noted the identity-of-interest exception from *Romero v. Union Pac. R.R.*, 615 F.2d 1303 (10th Cir.1980), and its four factors, but concluded that given the jury's verdict finding the entities "are so entwined as to justify holding the parent corporation liable for the subsidiary's actions, it would be anomalous to not also conclude that the parent had sufficient identity of interest to have been notified of the suit." *Id.* at 1185. The Court concurs with Plaintiff's argument that *Knowlton* can be read as adding an additional exception. *See Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1226–27 (10th Cir. 2014) (Under the single employer test, two entities can be found to effectively constitute a single employer if they are an "integrated enterprise." To make that determination, courts "generally weigh four factors: (1) interrelations of operation; (2) common management; (3) centralized control of labor relations; and (4) common ownership and financial control."); *Simmons v. Harman-Kim, Inc.*, 2008 WL 2575649 (D.Utah June 26, 2008) ("Because Plaintiff has alleged in the complaint that HMC and Defendant constitute an integrated enterprise, it may be unnecessary to determine whether an identity of interests exists between HMC and Defendant."); *E.E.O.C. v. Falls Village Retirement Community, Inc.*, 2007 WL 756803 (N.D. Ohio March 7, 2007) (citing *Knowlton* as recognizing that "establishing an integrated enterprise necessarily subsumes an identity of interest);. Defendant does not challenge the sufficiency of Plaintiff's factual allegations with regard to the single employer test. Furthermore, given the fact-intensive inquiry necessary in such, the Court concludes that Plaintiff's allegations are sufficient to survive a motion to dismiss. *See Smith v. Louie's Wine Dive Overland Park, LLC*, 2017 WL 529602 (D.Kan. Feb. 9, 2017).

3

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named party are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id*. at 1312 (internal quotations omitted). The Court must keep in mind that "complaints to the EEOC must be liberally construed in order to accomplish the purposes of the Act, since such complaints are written by laymen not versed either in the technicalities of pleading or jurisdictional requirements of the Act." *Gonzalez–Aller Balseyro v. GTE Lenkurt, Inc*., 702 F.2d 857, 860 (10th Cir.1983)(*quoting Romero*, 615 F.2d at 1311).

In its reply brief, Defendant contends Plaintiff cannot meet the *Romero* factors. The Court finds, however, that Plaintiff has sufficiently provided evidence in support of the *Romero* factors to avoid dismissal. The first factor weighs against Plaintiff, as she clearly was or should have been aware throughout her employment about the existence and relationship between StanTech and Standard Testing and Engineering Company to enable her to name both parties in her EEOC charge.[4] The Court finds, however, that the remaining factors weigh against dismissal of this action.

The second factor is whether the interest of the named party is so similar to that of the unnamed party that for purposes of obtaining voluntary conciliation and compliance it

---

[4] Plaintiff asserts that she believed StanTech and Standard Testing and Engineering were the same company. The citation to her declaration, however, does not support this alleged confusion. Similarly, her argument that she reasonably believed that filing a charge listing StanTech as respondent and including her work address was sufficient to identify Standard Testing and Engineering is not persuasive nor is it supported by her declaration.

4

would be unnecessary to include Standard Testing and Engineering in the EEOC proceedings. Defendant contends the majority owner of Standard Testing and Engineering is different from the majority owner of StanTech. In support of this argument, Defendant provides the affidavit of Eddie Proffitt, Chief Financial Officer of Standard Testing and Engineering Company. Mr. Proffitt avers that Standard Testing is majority owned by STEC Resources Corporation and that StanTech, LLC, is majority owned by Mary Kelly, and that they are separate companies, "with separation ownership interests." Doc. No. 23-1. Plaintiff, however, presents a declaration stating that she worked at the North Office, known as StanTech, which was located 4300 N. Lincoln, but that her office and an office at 3400 N. Lincoln were referred to, interchangeably, as StanTech or Standard Testing and Engineering. She asserts that StanTech and Standard Testing and Engineering shared certain services including accounting, payroll, benefits, and human resources. Plaintiff contends that her sick and vacation leave were tracked by employees of Standard Testing and Engineering, and that although her paycheck indicated the payor was StanTech, LLC, she submitted her time sheets to Standard Testing and Engineering and its accounting department issued the checks. She further contends her health benefits were administrated by Standard Testing and Engineering. Finally, she outlines common management between the two entities, including the President, Tom Kelly, her supervisor, Rick Mudd, who served as Vice President of Standard Testing and Engineering, Eddie Proffitt, who was comptroller and human resources manager for both. She further contends that these persons identified the employees at both entities as employees of the same company, that the companies shared budgets and resources, and expenses for advertising and promotional

materials. Finally, StanTech gave the "StanTech/Standard Testing and Engineering Company Employee Handbook" to Plaintiff. It refers throughout to "the Company," without specifying to which entity its terms applied. Given the alleged overlap in ownership and management interests, the Court finds that both StanTech and Standard Testing and Engineering had the same interests for purposes of conciliation and compliance. Mr. Kelly, the alleged decision maker, is purported to be in charge of both entities, and thus, would have had knowledge of the charge. Similarly, because Plaintiff alleges shared human resources functions, it is reasonable to assume at this juncture that Defendant Standard Testing and Engineering would have received notice of the charge against StanTech.

Additionally, Defendant Standard Testing and Engineering Company has not alleged, nor can the Court conceive of prejudice as a result of Plaintiff's failure to include the entity in her EEOC charge. There was no settlement of Plaintiff's claims against Defendant Standard Consulting (successor of StanTech) such that Standard Testing and Engineering was deprived of an opportunity to settle its claims at the same time. Finally, with regard to the final *Romero* factor, Plaintiff alleges that Tom Kelly treated the entities as a single unit in many respects, including with regard to the employee handbook Plaintiff was provided. The facts set forth in her declaration and unrebutted by Defendant indicate that in many respects the companies and their respective employees were treated as a single entity.

For these reasons, the Court concludes that Defendant Standard Testing and Engineering Company is not entitled to dismissal for lack of subject matter jurisdiction.

Furthermore, even if the issue is not jurisdictional, Plaintiff has presented sufficient evidence to avoid dismissal under the single employer theory of liability or under *Romero*, despite her failure to include the movant in her EEOC charge.

Defendant argues in its reply brief that Plaintiff's EEOC charge was untimely filed because it was not filed until 207 days after her termination. Defendant contends that because Plaintiff filed her charge with the EEOC and not the Oklahoma Office of Civil Rights Enforcement that she is not entitled to rely on the additional time granted to claimants in deferral states.[5]

Title VII provides:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred ... except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice ... such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred. . . .

42 U.S.C. § 2000e-5(e)(1). Plaintiff filed her charge with the EEOC more than 180, but less than 300 days after her termination. There is no dispute that she did not file her charge with the OCRE. Defendant's argument, however, lacks merit in light of the Worksharing Agreement for fiscal year 2015 executed between the Office of Civil Rights Enforcement, Office of the Oklahoma Attorney General, and the EEOC. The agreement includes the following relevant provisions:

---

[5] Defendant argues that Plaintiff failed to rebut this argument in her response. This failure, however, was likely due to the fact that Defendant did not raise this argument in its motion. Rather, it emphasized in bold type and by underlining that the EEOC charge was filed 207 days after her termination and never again addressed the issue of timing. The Court may address this issue, improperly raised for the first time in a reply brief, only because Plaintiff the Court granted her leave to file a sur-reply.

> In order to facilitate the assertion of employment rights, the EEOC and the FEPA each designate the other as its agent for the purpose of receiving and drafting charges. . . . The EEOC's receipt of charges on the FEPA's behalf will automatically initiate the proceedings of both the EEOC and the FEPA for the purposes of Section 706(c) and (e)(1) of Title VII.

Doc. No. 28-1. The issue of whether such a filing is sufficient to permit a plaintiff the additional filing period was recently addressed by the United States District Court for the District of Utah in *Braham v. Delta Airlines*, 184 F.Supp.3d 1299 (D.Utah 2016). "The question presented is whether, despite only filing a charge of discrimination with the EEOC, Plaintiff nevertheless initially filed a charge with the UALD. Those courts that have considered the issue have held that a charge 'is 'initially filed' with the deferral-state agency, even though it was actually filed first with the EEOC, where the EEOC and the deferral-state agency agree to act as agents for each other in the filing of charges of discrimination pursuant to a Work-Sharing Agreement.'" *Id.* at 1307 (quoting *Millage v. City of Sioux City*, 258 F.Supp.2d 976, 985 (N.D.Iowa 2003) (*citing Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 326–28 (2d Cir.1999)). The above-quoted language from the Worksharing Agreement is in accordance with *Branham*, and the Court concludes that Plaintiff is entitled to the 300-day limitations period and thus her charge was timely filed.

For the reasons set forth herein, Defendant's Motion to Dismiss (Doc. No. 12) and Defendant's Motion to Strike (Doc. No. 31) are hereby DENIED.

IT IS SO ORDERED this 24th day of March 2017.

*[signature: David L. Russell]*
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE